IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James Gatewood Blakely, *also known as James G. Blakely, also known as Jimmy G. Blakely,*<br><br>      Plaintiff,<br><br>vs.<br><br>Michael McCall; D. Bush; S. Clayton; M. Snyder; A. Enloe; Ms. Loew; Mr. Olsen; Ann Hallman; David M. Tatarsky; Robert Wards; William Byars, Jr.,<br>      Defendants. | C/A No. 5:12-410-MBS-KDW<br><br><br>REPORT AND RECOMMENDATION<br>Partial Summary Dismissal |

Plaintiff, James Gatewood Blakely, also known as James G. Blakely, also known as Jimmy G. Blakely, ("Plaintiff"), is a state prisoner in the Lieber Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"), in Ridgeville, South Carolina, who is proceeding pro se and *in forma pauperis*. Plaintiff brings this action pursuant to 28 U.S.C. § 1983, seeking declaratory and injunctive relief and damages.[1] The case is presently before the undersigned United States Magistrate Judge for report and recommendation following pre-service review, pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) D.S.C. Having reviewed the Complaint in accordance with applicable law, the undersigned recommends that it be summarily

---

[1] Not itself a source of substantive rights, § 1983 is the procedural mechanism through which Congress provides a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law." *See Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *See McKnight v. Rees*, 88 F.3d 417(6th Cir. 1996). To state a cause of action under § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

dismissed, without prejudice and without issuance and service of process, as to all Defendants except Defendant Nurse A. Enloe. Service of process on Defendant Enloe is recommended.

I. Background

  A. Plaintiff's Allegations

Plaintiff alleges that he was subjected to retaliation for filing a federal lawsuit against Warden McCall and Major Bush of SCDC's Perry Correctional Institution ("PCI"). Plaintiff also alleges obstruction of justice, denial of due process and equal protection, cruel and unusual punishment, and deliberate indifference to his medical needs, while he was a prisoner at PCI. *See* ECF No. 1 at 2; ECF No. 1-1 at 15. Plaintiff alleges that on August 11, 2011, the day another federal lawsuit he brought was served on Warden McCall and Major Bush by the United States Marshals Service, Plaintiff was "falsely accused of leaving over 100 trays unclean at work in the cafeteria" by Ms. Loew. *See* ECF No. 1 at 3; ECF No. 1-1 at 7. Plaintiff alleges that the following day, he "was unjustly fired" by Mr. Olson, after being called into the office and again falsely accused by Ms. Loew of walking out of the tray room during breakfast hours, leaving over 100 dirty trays. *Id.* Plaintiff further alleges that "Major Bush, Ms. Loew and Warden McCall conspired in retaliation against Plaintiff for filing civil actions." *Id.* Plaintiff alleges that he filed grievances on August 12, 2011 against Loew, Olsen, Bush, and McCall, but that McCall and Bush "somehow got Defendant Snyder to not process Plaintiff's grievances." *Id.* at 8.

Plaintiff alleges that Bush "informed Plaintiff that he was going to Nurse Enloe and seek her assistance in getting Plaintiff off the yard." ECF No. 1-1 at 8. Plaintiff alleges that, a few days later at sick call, on November 22, 2011, Nurse Enloe took Plaintiff's walking cane and replaced it with a metal walker, and said, "now that you have a walker I can transfer you." *Id.* Plaintiff alleges that

2

"on Nov. 22, 2011, the same day Plaintiff received the metal walker, Plaintiff fell down the stairs with the metal walker, coming from the shower," and "injured his back, leg, shoulder and neck." ECF No. 1-1 at 9. He alleges that Enloe "refused Plaintiff medical treatment." *Id.*

Plaintiff alleges that on November 23, 2011, an officer came to his dorm, started packing his property, and told Plaintiff that he was being transferred. ECF No. 1-1 at 9. Plaintiff avers the officer then placed him in lock-up for five days where "Plaintiff was denied medical treatment, showers, and any form of communication." *Id.* He avers this action "had to be retaliation because no inmate is taken to lock-up before transferring, nor must an inmate stay in lock-up five days prior to being transferred, unless he is threatened by other inmates, or he, himself, is threatening security [and] [n]one of this appl[ied] in Plaintiff's case." *Id.* at 10. Plaintiff alleges that he "was punished without receiving due process and equal protection[]" in violation of the Fifth, Eighth and Fourteenth Amendments. *Id.* Plaintiff alleges that he is aware that SCDC can transfer an inmate at any time, "'except[]' in retaliation." *Id.* He claims "[t]his was retaliation." *Id.* Plaintiff alleges that neither Enloe nor the administration can justify his transfer. *Id.* Plaintiff alleges that he "had a liberty interest in his job. By working in the cafeteria Plaintiff was able to reduce his sentence by earning work credit. Plus, Plaintiff's family live[s] in Greenville, S.C. and [PCI] sit[s] in Greenville County[,] which also gives Plaintiff another liberty interest in remaining at [PCI]." *Id.* at 11.

Plaintiff alleges Bush "maliciously harassed Plaintiff," but because Plaintiff would not allow himself to be provoked, Bush and McCall "just falsely accused and wrongfully transferred" Plaintiff. *Id.* Plaintiff alleges that, when he received no response to his grievances, he notified the Grievance Branch Chief, Ann Hallman, who "did not properly investigate Plaintiff's complaint [and] in fact claimed that there was not any evidence." ECF No. 1-1 at 12. Plaintiff alleges that Hallman denied

3

him due process and equal protection. Plaintiff alleges that "[b]ecause of the defendants' actions, Plaintiff is now at an institution drinking swamp-water that smell[s] extremely bad." *Id.* "The poor medical treatment here at [LCI] ha[s] cause[d] Plaintiff's sugar to get out-of-control and Plaintiff is now receiving insulin." ECF No. 1-1 at 12-13. Plaintiff alleges that Robert Wards has "refused to investigate [PCI] and ha[s] refused to see that Plaintiff receives justice." *Id.* at 13.

Plaintiff alleges that he has attempted to exhaust the prison grievance process by filing grievances on August 12, 15, and 18, 2011. *Id.* As of February 3, 2012, when he drafted his Complaint, Plaintiff had received no response to the grievances. *Id.* Plaintiff alleges that he has complained to Hallman and Tatarsky about Snyder's failure to timely process his grievances, and that the failure constitutes "obstruction of justice." ECF No. 1-1 at 14.

Plaintiff asks for: a declaration that the acts and omissions described violated Plaintiff's rights; compensatory damages of $20,000 against each Defendant; punitive damages of $10,000 against each Defendant; and the following injunctive relief: an order directing that Plaintiff be returned to PCI to his same dorm and room; that Plaintiff be awarded earned work credits from August 12, 2011 until the present; that Plaintiff be given back his job in the cafeteria; and that officials stop harassing Plaintiff for exercising his constitutional rights. *See* ECF No. 1 at 4; ECF No. 1-1 at 15-16 (these pages are numbered (15) and (17) in Plaintiff's Complaint; Plaintiff did not submit a numbered page (16)).

B.     Pro Se and In Forma Pauperis Review

Under established local procedure in this judicial district, the court has carefully reviewed Plaintiff's pro se Complaint. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. §§ 1915, 1915A, and the Prison Litigation Reform Act of 1996 ("PLRA"), and in light

4

of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden*, *Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995) (*en banc*); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

Plaintiff filed this Complaint pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A finding of frivolousness can be made when the complaint "lacks an arguable basis either in law or in fact." *Denton*, 504 U.S. at 31. Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. *Neitzke*, 490 U.S. 319.

Pro se complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *Erickson*, 551 U.S. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d

5

387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

II.     Discussion

Plaintiff alleges Defendants retaliated against him for filing a § 1983 civil lawsuit against Warden McCall and Major Bush.[2] Plaintiff alleges that Defendants' retaliatory acts included: (1) firing Plaintiff from his job in the cafeteria; (2) failing to process Plaintiff's grievances and failing to investigate Plaintiff's complaint concerning the undue delay in responding to his grievances; (3) transferring Plaintiff to another institution, after confining Plaintiff in lock-up for five days prior to the transfer. In addition, Plaintiff alleges that he was refused medical treatment for his injured back, leg, shoulder and neck, by Defendant Enloe, on November 22, 2011, after Plaintiff fell down the stairs while using a new metal walker that Enloe gave Plaintiff that same day to replace the cane that he had previously used. Plaintiff also alleges that, when Defendant Enloe took his cane and replaced it with a metal walker, she said "now that you have a walker I can transfer you." ECF No. 1-1 at 8. Plaintiff further alleges that he was subjected to cruel and unusual punishment by being placed in lock-up for five days during which time he was denied medical treatment, showers, and any form of communication." *Id.* Finally, Plaintiff alleges that his due process and equal protection rights

---

[2] The undersigned takes judicial notice of Plaintiff's § 1983 claim against 15 SCDC employees at Lee Correctional Institution and PCI, in *Blakely v. Byars, et al.*, C/A No. 5:11-871-MBS-KDW (D.S.C.). In that case Plaintiff alleges that he was twice falsely charged with disciplinary violations, denied legal materials/access to mail, and was unable to exhaust his grievance procedures because the defendants conspired to retaliate against him for filing prior civil lawsuits. The defendants' motion for summary judgment is presently pending in the case. On April 23, 2012, Plaintiff filed his 194-page response to the defendants' motion for summary judgment. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

6

were violated by his firing, his placement in lock-up, his transfer to another institution, and by Defendants' failure to respond to his grievances and his complaint.

      A.      Retaliation, Obstruction of Justice, Denial of Due Process and Equal Protection, and Cruel and Unusual Punishment Claims

To succeed on his retaliation claim, Plaintiff must allege facts sufficient to demonstrate that the alleged retaliatory acts "w[ere] taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citations omitted). Additionally, Plaintiff must show that Defendants' alleged retaliatory actions adversely impacted him. *ACLU of Md., Inc. v. Wicomico Cnty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993). Many courts have also held a plaintiff must come forward with specific evidence "that but for the retaliatory motive, the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *see Miska v. Middle River Reg'l Jail*, No. 7:09cv172, 2009 WL 1916726, at *5 (W.D. Va. July 2, 2009).

To state a First Amendment § 1983 retaliation claim, a plaintiff must establish three elements: (1) the plaintiff's right to speak was protected; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship existed between the plaintiff's exercise of his right and the defendant's retaliatory action. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000) (citations omitted). The court will assume the existence of the first element, as "[t]he filing of a lawsuit carries significant constitutional protections, implicating the First Amendment right to petition the government for redress of grievances, and the right of access to courts." *ACLU of Md., Inc.*, 999 F.2d at 785 (internal citation omitted). *See Lewis v. Casey*, 518 U.S. 343, 355 (1996) (finding a prisoner has a right of access to the courts insofar as the legal claim pertains to direct criminal

7

appeals, habeas corpus applications, and civil rights claims challenging the conditions of confinement).

As to the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks and citations omitted). Generally, transfer to the general population of another prison alone is not an adverse action upon which a retaliation claim may be based. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (unpublished) ("[T]ransfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." (internal quotation marks and citations omitted)). An inmate must "allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than *de minimis* inconvenience." *Goodman v. Smith*, 58 F. App'x 36, 38 (4th Cir. 2003) (citing *ACLU of Md., Inc.*, 999 F.2d at 785-86).

Plaintiff has not made any specific allegations that his access to the courts has been chilled or that he has suffered any particular relevant inconvenience implicating any other constitutionally protected liberty interest because of Defendants' alleged retaliation. The undersigned can take judicial notice of Plaintiff's continued, vigorous exercise of his right to access this court, in that Plaintiff's prior lawsuit, *Blakely v. Byars, et al.*, C/A No. 11-871, is currently pending in this court and Plaintiff has filed numerous motions, responses to motions, and objections in that case. Subsequent to the actions alleged in the instant Complaint and the filing of this case, Plaintiff filed another suit in this court, as well: *Blakely v. Thompson, et al.*, 5:12-972-MBS-KDW (D.S.C.).

8

Further, Plaintiff continues to correspond with the court concerning requests for copies of exhibits filed in a previous case, *Blakely v. Padula*, C/A No. 4:10-3280-MBS-TER (D.S.C.), and notification to the court of Plaintiff's change of address in another case that is currently on appeal to the Fourth Circuit, *Blakely v. Ozmint, et al.*, C/A No. 4:10-718-RMG-TER (D.S.C.). When there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. *ACLU of Md., Inc.*, 999 F.2d at 785. Here, Plaintiff has failed to allege sufficient facts to show that he was adversely impacted by the transfer or that he would have remained at PCI but for the alleged retaliatory transfer.

As to the third element, the inmate must point to "specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension." *Goodman*, 58 F. App'x at 38 (citing *Adams*, 40 F.3d at 75). "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D.N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). The "relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). Here, Plaintiff alleges service of process of his previous lawsuit on Defendants McCall and Bush occurred on August 11, 2011, and he was falsely accused of leaving his work area in the cafeteria without cleaning over 100 dirty trays on the same day, and then fired from his cafeteria job the next day. ECF No. 1-1 at 7. However, mere temporal proximity between an inmate's protected activity and the allegedly retaliatory official action "is simply too slender a reed

9

on which to rest" a § 1983 retaliation claim. *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993). Moreover, Plaintiff alleges that it was over three months later, on November 23, 2011, that he was notified of his impending transfer to another institution. With respect to Plaintiff's allegation that his firing and his transfer were pretexts for retaliation, the Fourth Circuit has stated "[i]n the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams*, 40 F.3d at 74).

In addition, Plaintiff's accusations fail to demonstrate that each alleged retaliatory act violated some constitutional right of an inmate or constituted punishment for the exercise of a constitutional right. *Adams*, 40 F.3d at 75. Neither Plaintiff's firing from his cafeteria job, nor the lack of a response to his grievances, nor his transfer to another institution implicates any constitutional right. Like Plaintiff's retaliation claim, Plaintiff's claims of "obstruction of justice" and violation of due process and equal protection fail to state cognizable claims, because Plaintiff does not have a protected constitutional interest in a prison job; in the prison grievance process; or in being housed in a particular institution, at a particular custody level, or in a particular portion or unit of an institution.

Contrary to Plaintiff's assertion, it is well settled that an inmate has no federally protected right or interest in a prison job or any job at all while incarcerated. *See James v. Jackson*, No. 08-144, 2009 WL 291162, at * 8 (D.S.C. Feb. 4, 2009) ("[I]nmates do not have a liberty interest derived from the due process clause, nor do they have a property interest, in a specific job or any job at all while incarcerated"); *Williams v. Farrior*, 334 F. Supp. 2d 898, 903-904 (E.D. Va. 2004). *See also Cosco v. Uphoff*, 195 F.3d 1221, 1224 n.3 (10th Cir. 1999) (noting that an inmate has no

property interest in his or her prison job); *Miller v. Benson*, 51 F.3d 166, 170 (8th Cir. 1995) (same); *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982) ("Any expectation that [Plaintiff] may have had of keeping his prison job does not amount to a property or liberty interest."). Inmates have no protected interest in the ability to earn work credits. Unlike "good time" credits, which an inmate is entitled to pursuant to state law, the opportunity to earn work credits is at the discretion of the Director of the SCDC. S.C. Code Ann. § 24-13-230(A) and (D); *see also Olim v. Wakinelona*, 461 U.S. 238, 249 (1983) (unless state law places "substantive limitations" on official discretion, no liberty interest is created). Because of the discretionary nature of earned work credits, the inability to earn those credits is an "ordinary incident of prison life." *See Sandin v. Conner*, 515 U.S. 472 (1995). Furthermore, as the loss of the potential to earn those credits would not "impose an atypical and significant hardship" or "inevitably affect the duration" of Plaintiff's sentence, no due process is required before SCDC places restrictions on an inmate's ability to earn such credits. *Id.*; *Skipper v. S.C. Dep't. of Corr.*, 633 S.E.2d 910, 915 (S.C. Ct. App. 2006)

Plaintiff does not have a constitutionally protected interest in access to the grievance process. *Adams*, 40 F.3d at 75 (prisoners do not have a constitutional right of access to the grievance process). *See, e.g., Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) ("Federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."). *See Johnson v. S.C. Dep't of Corr.*, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ("Plaintiff's allegation

11

that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."). Thus, Plaintiff has not stated a cognizable § 1983 claim that Defendants' obstructed justice and violated his due process and equal protection rights by failing to process his grievance and failing to investigate the delay in responding to his grievance.

Furthermore, Plaintiff's alleged retaliatory transfer, including his temporary placement in lock-up pending his transfer, did not violate Plaintiff's Eighth Amendment right to not be subjected to cruel and unusual punishment, or his Fourteenth Amendment rights to due process and equal protection. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The United States Supreme Court has explained that the first prong is an objective one—the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious;'" and the second prong is subjective—the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" *Id.* (second alteration in original) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). In the Fourth Circuit, as a general matter, "only governmental conduct that 'shocks the conscience' is actionable as a violation" of the Eighth or Fourteenth Amendment. *Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (citing *Young v. City of Mount Ranier*, 238 F.3d 567, 574 (4th Cir. 2001) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)).

12

Plaintiff alleges that, on November 23, 2011, an officer came to Plaintiff's dorm, started packing his property and told Plaintiff that he was being transferred, then placed Plaintiff in lock-up for five days where, awaiting transfer, "Plaintiff was denied medical treatment, showers, and any form of communication." ECF No. 1-1 at 9. As discussed below, Plaintiff's allegation that he was denied medical treatment for the alleged injuries he sustained to his back, leg, shoulder and neck when he fell down the stairs on November 22, 2011 may be sufficient to state a cognizable claim of deliberate indifference to a serious medical need as to defendant Nurse A. Enloe. However, Plaintiff's conclusory allegation that this action "had to be retaliation" fails to state a plausible claim for the reasons outlined above. Similarly, Plaintiff's allegation that his Eighth Amendment right was violated because he was denied showers and any form of communication for five days fails to state a cognizable claim. Prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement: they must ensure adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable. *See Mickle v. Moore (In re Long Term Admin. Segregation of Inmates Designated As Five Percenters)*, 174 F.3d 464 (4th Cir. 1999). Indeed, the Fourth Circuit has noted that "isolation from companionship, restriction on intellectual stimulation[,] and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render [that] confinement unconstitutional absent other illegitimate deprivations." *Sweet v. S. C. Dep't of Corr.*, 529 F.2d 854, 857 n.1 (4th Cir. 1975). Plaintiff's allegations are insufficient to state a plausible claim that he suffered an extreme deprivation of any "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. at 304.

Plaintiff's claim that his placement in lock-up pending transfer to another institution violated his due process right also fails to state a cognizable claim. In 1995, the United States Supreme Court decided *Sandin v. Conner*, 515 U.S. 472, in which the Court held that a liberty interest implicating the Due Process Clause only exists when the prisoner can demonstrate that the challenged state or federal action would "inevitably affect the duration of his sentence" or impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 487. Examples of such "atypical and significant hardships" are transfer to a mental hospital and involuntary administration of psychotropic drugs. *See, e.g., Washington v. Harper*, 494 U.S. 210, 221-22 (1990)*; Vitek v. Jones*, 445 U.S. 480, 493 (1980). The Due Process Clause does not grant a prisoner a liberty interest in remaining in the general prison population. *Sandin v. Conner*, 515 U.S. at 478. Plaintiff has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification. *See Olim v. Wakinekona*, 461 U.S. at 250-51 (noting inmates have no due process right to choose their specific place of confinement); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) ("[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."); *Brown v. Evatt*, 470 S.E.2d 848, 851 (S.C. 1996) ("The federal constitution vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as the challenged conditions or degree of confinement are within the sentence imposed and are not otherwise violative of the Constitution.").

With respect to Plaintiff's allegation that he had no form of communication, such a restriction fails to implicate a liberty interest protected by due process. *See United States v. Alkire*,

No. 95-7885, 1996 WL 166400, at *1 (4th Cir. 1996) (finding no constitutional right to the use of a phone while in prison); *White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977) (noting "there is no constitutional right to prison visitation"). In fact, "[e]ven a transfer to a maximum security facility with more burdensome conditions is within the normal limits or range of custody which the conviction has authorized the state to impose. This is true even though such a transfer operates as a real hardship on the inmate who is effectively separated by the transfer from his only contact with the world outside the prison." *Bazzetta v. McGinnis*, 430 F.3d 795, 804 (6th Cir. 2005) (quoting in part *Meachum v. Fano*, 427 U.S. 215, 228 (1976) and *Montanye v. Haymes*, 427 U.S. 236 (1976) (internal quotations omitted)). "The federal constitution vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as the challenged conditions or degree of confinement are within the sentence imposed and are not otherwise violative of the Constitution." *Brown v. Evatt*, 470 S.E.2d at 851.

To the extent Plaintiff attempts to allege a violation of equal protection, the Complaint fails to sufficiently show that his alleged disparate treatment lacked a rational basis. *See Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008) (affirming the dismissal of a complaint that failed to adequately allege the absence of a rational basis supporting the plaintiff's disparate treatment).

Plaintiff's Complaint includes general conclusory allegations that Defendants Byars, McCall, Clayton, Wards, and Tatarsky are supervisory officials of SCDC and are legally responsible for its operations and for the actions of the correctional officers at PCI. To the extent that Plaintiff seeks to hold these Defendants liable in their supervisory capacities, the doctrine of respondeat superior generally is inapplicable to § 1983 suits. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). "Because vicarious liability is

inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).

Plaintiff also alleges that "Major Bush, Ms. Loew and Warden McCall conspired in retaliation against Plaintiff for filing civil actions." ECF No. 1 at 3; ECF No. 1-1 at 7. To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in the deprivation of a constitutional right. *Glassman v. Arlington Cnty.*, 628 F.3d 140, 150 (4th Cir. 2010) (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996)). Plaintiff has not shown that the alleged retaliatory acts deprived him of any constitutionally protected liberty interest; therefore, Plaintiff fails to state a cognizable conspiracy claim.

B.  Denial of Medical Treatment Claim

Plaintiff alleges that "on Nov. 22, 2011, the same day Plaintiff received the metal walker [from Nurse Enloe], Plaintiff fell down the stairs with the metal walker, coming from the shower," and "injured his back, leg, shoulder and neck." ECF No. 1-1 at 9. Plaintiff alleges that Nurse Enloe "refused Plaintiff medical treatment." *Id.* Plaintiff further alleges that he was denied medical treatment for the next five days, while awaiting transfer to another institution. *Id.* "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). While the provision of medical care by prison or jail officials is not discretionary, the type and amount of medical treatment is discretionary. *Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). In *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D. Kan. 1986) (quoting

16

*Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976)), the district court ruled that the proper inquiry for indifference is whether the prison or jail provided *any* treatment, and that the inmate's agreement or disagreement with the nature and extent of treatment provided is irrelevant. In light of this standard, the undersigned is of the opinion that Plaintiff's Complaint raises sufficient factual issues with respect to the conduct of Defendant Nurse A. Enloe to require that the Complaint be served upon her and that she answer or otherwise respond to Plaintiff's allegations.

III.     Recommendation

For the reasons discussed above, the undersigned recommends that the Complaint be partially summarily dismissed as to Defendants Michael McCall; D. Bush; S. Clayton; M. Snyder; Ms. Loew; Mr. Olsen; Ann Hallman; David M. Tatarsky; Robert Wards; and William Byars, Jr., without prejudice and without issuance and service of process. *See Denton v. Hernandez*, 504 U.S. 25; *Neitzke v. Williams*, 490 U.S. 319; *Haines v. Kerner*, 404 U.S. 519; *Brown v. Briscoe*, 998 F.2d 201 (4th Cir. 1993); *Todd v. Baskerville*, 712 F.2d 70; *see also* 28 U.S.C. § 1915(e)(2)(B). The Complaint should be served on the remaining Defendant, Nurse A. Enloe.

**Plaintiff's attention is directed to the important notice on the next page.**

IT IS SO RECOMMENDED.

*/s/ Kaymani D. West*

May 10, 2012                                                                      Kaymani D. West
Florence, South Carolina                                                  United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The petitioner is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk of Court
United States District Court
Post Office Box 2317
Florence, South Carolina 29503**

Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).